JOHN STICKNEY *vs.* MAX M. EPSTEIN.

* Third Judicial District, Bridgeport, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, KEELER and WOLFE, Js.

An assignment of error should point out wherein the charge respecting a certain subject "was inadequate"; otherwise it fails to comply with the statutory (§ 5837) requirement.

It is not essential that the jury should be given a definition of contributory negligence in so many words, provided the instructions touching negligence, proximate cause, and the standard or degree of care required of the plaintiff, fully serve the purpose of such a definition.

An instruction that if the plaintiff was guilty of any negligence which contributed directly to his injury, he could not recover, is too favorable to the defendant; for the rule in this State is that only such negligence as materially and essentially, as well as directly, contributes to the injury, constitutes contributory negligence.

The owner of a motor-car which is maintained by him for the general use and convenience of his family is liable, under the common law of this State, for the negligence of a member of the family who has general authority to drive it, while the car is being used as a family car. This rule, inherently just, rests on the broad ground that everyone who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by

Stickney *v.* Epstein.

any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority. The case of *Wolf* v. *Sulik*, 93 Conn. 431, sanctions the foregoing proposition, although that case was decided under § 1572 of the General Statutes, since repealed by Chapter 334 of the Public Acts of 1921.

Argued November 2d—decided December 13th, 1923.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant's wife in the operation of an automobile owned by him, in colliding with the plaintiff's motorcycle, brought to the Superior Court in Hartford County and tried to the jury before *Haines, J.;* verdict and judgment for the plaintiff for $10,000, and appeal by the defendant. *No error.*

Upon the trial of this action to a jury, the plaintiff offered evidence to prove these facts: He was a licensed operator of a motorcycle on September 15th, 1921, and was sitting on a motorcycle parked near the curb on the northerly side of Albany Avenue, in Hartford. The cycle faced westerly and stood there a short time. He then looked easterly to see if the street was clear for him to cross, and put out his left hand indicating that he was about to cross to the southerly side of the avenue, turned his cycle and started to cross. He could see easterly about two hundred feet and the road appeared to him to be clear of traffic. He completed his turn and reached a point near the southerly curb and then proceeded in an easterly direction, when the defendant's automobile, driven by his wife, crossed from the northerly side in a diagonal direction and collided with the plaintiff's cycle near the southerly curb at a point almost opposite his parking place on the northerly side, and thereby severely injured the plaintiff. The automobile colliding with the cycle and then driven by the defendant's wife, was owned by the defendant and used and maintained by him for the

business, use, pleasure, health and convenience of his wife and family, and at the time the plaintiff was injured, the defendant's automobile was being used for the purpose for which the defendant purchased and maintained it. The defendant's wife had general authority from him to take and use the automobile when and as she pleased, and at the time the plaintiff was injured the defendant's wife was using the automobile with the authority of the defendant in pursuance of the objects for which the defendant bought, owned and maintained the car. The purpose for which the defendant's wife was operating the automobile was a family purpose, and it was the purpose for which the defendant intended the automobile to be used, and at the time the plaintiff was injured the automobile was being used by the defendant's wife in carrying out the purpose for which the defendant maintained the automobile. The defendant's wife was negligent in failing to keep to the right, and in operating the car at a reckless and excessive rate of speed, and in failing to give warning of her approach and to keep a proper lookout.

The defendant claimed to have proved these facts: The defendant's wife was operating his car westerly on Albany Avenue at a speed of fifteen to eighteen miles an hour, and saw the motorcycle parked at the northerly curb of the Avenue. Without putting out his hand or in any way signalling, the plaintiff started from the curb and went ahead in the same general direction as the defendant's wife was traveling for a few feet, and when the defendant's automobile was approximately twenty-five feet behind him the defendant's wife sounded a warning that she was about to pass him and started her car up to about twenty miles an hour. When she reached a point approximately ten feet behind him, the plaintiff suddenly turned to his left in an

attempt to turn around in front of the defendant's automobile. The defendant's wife had been operating the automobile with the left-hand wheels in the west-bound track and the right-hand wheels outside of the northerly rail of the west-bound track, and upon seeing the plaintiff make this sudden turn she turned her automobile to the left for the purpose of avoiding a collision, jammed on her brakes, threw out her clutch at the same time, and stopped the car at approximately a distance of ten to twenty feet. The plaintiff's front wheel collided with the defendant's automobile at a point between the front bumper and the front fender of the automobile, and when the collision occurred the automobile had just come to a standstill, and the collision occurred upon the southerly or east-bound track. The defendant had purchased the automobile and paid for it himself, and had it registered in his name. His family consisted of himself, his wife and one small child about three years of age. He purchased the automobile partly for use in his business, which is that of a certified public accountant, and also for his own pleasure and the pleasure of his wife and family. Both the defendant and his wife were, and for approximately three years had been, licensed operators of motor-vehicles. She had general authority from him to take the automobile when he had no occasion to use it, for use either for the family or for her sole and separate pleasure, and the said automobile on this occasion was being operated by the defendant's wife solely for her own pleasure purposes, and she was not doing any errand or business in a commercial sense for the defendant. On the night in question the defendant was at home and his wife told him that she was going to take a little ride as the night was warm, and she took the automobile, drove to her sister-in-law's house, her sister-in-law being married and having a child about

seven years of age, picked them up and took them for a pleasure ride to East Hartford, and it was while she was returning that the collision with the plaintiff's motorcycle occurred.

There was no dispute between the parties as to the facts concerning the use of the automobile on the occasion in question, or the purpose for which the automobile was being used, and it was admitted by both parties that the defendant's wife was doing nothing for the defendant on the occasion in question and was not engaged in the business of the defendant, unless the furnishing of pleasure to the wife by the husband was the business of the defendant and created a status of principal and agent between the defendant and his wife.

*Joseph F. Berry*, with whom was *Austin D. Barney*, for the appellant (defendant).

*Hugh M. Alcorn*, with whom was *Thomas J. Conroy*, for the appellee (plaintiff).

CURTIS, J. The appeal in this action is based solely on the alleged errors in the charge of the court. The first claim is that the court erred in failing to adequately charge the jury in respect to contributory negligence. We have repeatedly held that an assignment of error in this form is not sufficient. The assignment should state in what respect the charge as to contributory negligence was inadequate.

The second assignment of error is that the court erred in failing to define contributory negligence. As the situation presented by the facts which the parties offered evidence to prove obviously involved the question of contributory negligence, the defendant was entitled to have the subject of contributory negligence

dealt with in the charge. It is not essential that the jury should be given a definition of contributory negligence in so many words, provided the instructions touching negligence, proximate cause, and the standard or degree of care required of the plaintiff, fully serve the purpose of such a definition. *Huber* v. *Douglas, Inc.*, 94 Conn. 167, 108 Atl. 727. The court defined negligence as the failure to use " that degree of care which an ordinary, reasonable and prudent person would have exercised under the same circumstances"; and further instructed the jury that if the plaintiff was guilty of any negligence which contributed directly to his injury, he could not recover. The court by "any negligence" referred to the negligence already defined. So that the charge did define contributory negligence and accurately except in a single particular. When the court said that if the plaintiff was guilty of *any* negligence which contributed directly to his injury he could not recover, the charge was too favorable to the defendant. Our rule is, not that any negligence which contributes directly to the injury will bar a recovery, but that any negligence which materially and essentially as well as directly contributes to the injury. *Andrews* v. *Dougherty*, 96 Conn. 40, 46, 112 Atl. 700; *Longstean* v. *McCaffrey's Sons*, 95 Conn. 486, 495, 111 Atl. 788. The first and second assignments of error are not sustained.

The remaining assignments of error are to the effect that the charge of the court did not correctly state the common law of this State when it charged the jury to this effect: that if they found that one of the purposes of the defendant in buying and keeping the automobile, which was driven on the occasion of this injury by his wife, was to give pleasure to members of his family by permitting them to use the car for their own pleasure, then his wife, while using the car for her own pleasure

on this occasion in accord with such purpose of the defendant, was using the car in the performance of the defendant's business within the scope of her authority, and was his agent; and if they found that the plaintiff's injury was caused by the negligence of the wife so acting, and the plaintiff was free from any contributory negligence, their verdict should be for the plaintiff. In the case of *Wolf* v. *Sulik*, 93 Conn. 431, 106 Atl. 443, which dealt with the proper construction of § 1572 of the General Statutes [1]—a section which was repealed before the injury involved in this action occurred, by Chapter 334 of the Public Acts of 1921—we discussed somewhat the common-law rules in situations similar to that which the plaintiff claims to have proved in the instant case. In the case cited the jury could reasonably have found that a wife owned an automobile, which she had given her husband, a licensed operator, general authority to take at his pleasure whenever he wanted to go anywhere, without obtaining special permission to do so; and that he had been in the habit of doing so, and was so doing when the injury involved in that case occurred and which might have been found to have been caused by his negligent

[1] Sec. 1572. OWNER RESPONSIBLE FOR NEGLIGENCE OF EMPLOYEE OR AGENT. If the owner of any horse or other animal, or of any vehicle, shall entrust such animal or vehicle to his agent, bailee, servant or employee, to be ridden, led, driven or operated by such agent, bailee, servant or employee upon the public highways, or shall rent or loan the same to an incompetent and inexperienced person to be thus ridden, led, driven or operated, and such agent, bailee, servant or employee, while in the performance of such owner's business within the scope of his authority, or such incompetent or inexperienced person, as a result of such incompetency and inexperience, shall, by neglecting to conform to any provision of sections 1568 or 1569, cause any injury to the person or property of another, such owner shall pay to the party injured his actual damages and costs; but in every case the party injured shall elect whether he shall proceed against such owner under the provisions of this section or against the person actually causing such injury under the provisions of section 1573.

driving of his wife's car. In holding that such facts would bring the case within the statute, we took occasion to speak generally of the responsibility of owners of pleasure cars maintained for the pleasure and convenience of the owner's family. We quote from *Wolf v. Sulik*, pp. 435, 436, 437, as follows: "This question of the responsibility of owners of pleasure cars maintained for the use and convenience of members of the owner's family, has been the subject of considerable litigation in recent years. The cases on the subject are collected and reviewed in the note to *Birch v. Abercrombie*, 50 L. R. A. (N. S.) 59 (74 Wash. 486, 133 Pac. 1020), and in the note to *McNeal v. McKain*, 41 L. R. A. (N. S.) 775 (33 Okla. 449, 126 Pac. 742). We need not refer to them in detail, because our decision must be controlled by the statute. It is enough to say that while there is some conflict of opinion, the increasing weight of authority seems to be that when a motor-car is maintained by the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car. *Smith v. Jordan*, 211 Mass. 269, 97 N. E. 761; *Daily v. Maxwell*, 152 Mo. App. 415, 133 S. W. 351; *Stowe v. Morris*, 147 Ky. 386, 144 S. W. 52; *McNeal v. McKain*, 33 Okla. 449, 126 Pac. 742; and other cases in the notes above referred to. The inherent justice of the rule thus stated is apparent, and the chief reason why some courts have declined to follow it is because, on the facts of the case, they could not spell out the relation of master and servant, which at the common law must necessarily be established before the rule *respondeat superior* becomes applicable at all. See, for example, *Doran v. Thomsen*, 76 N. J. L. 754, 71 Atl. 296. . . . The difficulty of formulating any satisfactory explanation for all of the recognized applications of

the rule *respondeat superior* is well understood, but it is generally accepted as a necessary rule of public policy and social justice.  Under an older and simpler economic system, the rule was restricted in its application to the relation of master and servant, and in its origin that relation rested on the right of one man to control the conduct of another.  But theoretically as well as practically, the master's responsibility for the negligence of his servant extends far beyond his actual or possible control over the conduct of the servant.  It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority.  In this case the defendant desired to maintain a pleasure car for the convenience of her husband.  If in carrying out her purpose she had employed a chauffeur to drive him about, she would have been liable, on the principle above stated, for the chauffeur's neglect while so engaged.  Now, suppose that she chooses to eliminate the chauffeur and to authorize her husband to drive himself about. There seems to be no reason, except the traditional limitations of the rule *respondeat superior*, why she should not also be liable for his neglect, while so engaged.  She is still accomplishing her original purpose, and still managing her own affair through another. She had no more control over the conduct of the chauffeur while he was driving her husband about, than she had over her husband's conduct while he drives himself about; and she may terminate the authority of either at will."

We there said, in effect, that at common law, while there is a conflict of authority, the weight of authority seems to be that when a motor-car is maintained by

the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car, and that the inherent justice of the rule thus stated is apparent. The rule rests on the broad ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority. In that opinion we intended to sanction the claim that at common law when a paterfamilias maintains an automobile for the pleasure, use and convenience of his family and in pursuance of such purpose authorizes members of his family to use it for such purpose, he by so doing makes such pleasure uses his affair, and constitutes members of the family so operating the car his agents engaged in the prosecution of his affairs.

We are satisfied that the same rules of public policy and social justice which entailed former extended applications of the rule *respondeat superior* to new situations at common law, still apply, and entail its application to the situation presented in this case. We hold, therefore, that the third, fourth, fifth and sixth reasons of appeal are not well taken.

There is no error.

In this opinion the other judges concurred.