The Hartford Steam Boiler Inspection and Insurance Company *vs.* Firemen's Mutual Insurance Company et als.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued November 10th, 1933—decided January 3d, 1934.

F. H. *Nash,* of Boston, with whom were *Richard Wait,* of Boston, *Joseph F. Berry* and *Julius G. Day, Jr.,* for the appellants (defendants).

*John T. Robinson* and *Francis W. Cole,* with whom, on the brief, was *Pomeroy Day,* for the appellee (plaintiff).

BANKS, J.  The following facts appear from the finding: Prior to August 5th, 1930, the plaintiff had issued to the Republic Steel Corporation a policy of insurance insuring it against loss caused by a sudden and accidental tearing asunder of two horizontal air receivers in its power house, "caused by pressure of steam, air, gas, water or other liquid therein," but "excluding (a) loss from fire (or from the use of water or other means of extinguishing fire); (b) loss from an accident caused by fire."  The named defendant and twelve other insurance companies had issued to the same corporation policies of insurance insuring its equipment and plant against loss caused by fire or due to explosion caused by fire, except such property as was specifically insured against similar liabilities in whole or in part.  On August 5th, 1930, an explosion occurred in the plant of the Republic Steel Corporation as a result of which

certain equipment, including the two air receivers, was damaged or destroyed, all of which equipment was included in the property described in the defendants' policies. The plaintiff claimed that the loss was caused by fire and that no part of it was covered by its policy. The defendants claimed (a) that the loss was not caused by fire, and (b) that a portion of the property destroyed was "specifically insured" against similar liabilities under the plaintiff's policy, and that the plaintiff was liable for at least a part of the loss and the defendants not liable in so far as the plaintiff was liable. It was conceded, however, that liability for the loss rested somewhere between the parties, who agreed that the plaintiff should advance two-thirds and the defendants one-third of the adjusted claim, and that their respective liability should be left to arbitration. This was done and the arbitrators found that the explosion was caused by fire and that the plaintiff was not liable for any part of the loss, and in a supplemental award, signed by two of them only, found that there was due the plaintiff from the defendants the sum of $33,806.27, which was the amount paid by the plaintiff to the Republic Steel Corporation, being the agreed upon two-thirds of the adjusted loss. The defendants refused to pay this amount, and the plaintiff brought this action to recover it.

Though the arbitrators found that the explosion was caused by fire and that the plaintiff was not liable for any part of the loss, their award contained a finding of certain subordinate facts as to the location and cause of the fire upon which the defendants base the claim which they now make, and which is their fundamental contention upon this appeal, that the loss was due to a fire which was not within the coverage of their policies, and therefore they are not bound by the award of the arbitrators. That one or both of the

parties were liable for the loss was the underlying assumption upon which they acted in submitting their differences to arbitration. The agreement to pay and the actual payment of the total amount of the loss to the Republic Steel Corporation is explicable only upon such assumption. The finding of the trial court that prior to the execution of the agreement to arbitrate their respective liability it was conceded and agreed that liability for the loss rested somewhere between them, is not attacked, indeed, the defendants' brief states that such was the fact. It was upon that definite understanding that the arbitration agreement was entered into, and upon which both parties acted up to the time that the award was made. The position which the defendants now take that, though the arbitrators have found that the plaintiff was not liable for any part of the loss, they can still dispute their own liability, involves a repudiation of the understanding, which was the basis upon which the arbitration agreement was entered into, and is one which they cannot now be permitted to assume.

Agreeing that it was conceded that the parties should bear the loss between them, the defendants contend that it does not follow that they conceded that they would pay the entire loss if it should appear that the plaintiff's policy did not cover. However that may be, it is apparent that, having assumed the loss between them, and having paid it on joint account, the whole purpose of the arbitration agreement was to reallocate it as between themselves with the understanding that, upon such reallocation, there should be a refund by one party to the other who should be found not liable. Such an agreement is implicit in the entire undertaking and the language of the agreement to arbitrate, which was received in evidence as Exhibit A, is not susceptible of any other construction. It pro-

vides for a joint adjustment of the claim of the Republic Steel Corporation and the payment of the adjusted loss, one-third by the defendants and two-thirds by the plaintiff, "such payments to be regarded as advances by the respective parties pending the awards of the arbitrators," that "the determination of the respective liability of each party for this loss" is to be left to a board of arbitration, and that "both parties agree to abide by the award of the majority of the board of arbitration and to any necessary refund in the allocation of loss thus awarded." It states that the payments made to the Republic Steel Corporation are to be regarded as advances by the respective parties pending the award of the arbitrators, and that both parties agree to "any necessary refund in the allocation of the loss." This can only mean a refund by one of the parties to the other of any sum advanced by it for which, in an allocation of the loss upon the determination by the arbitrators of the cause of the explosion, it is found that it was not liable.

Before making its payment the plaintiff suggested that the parties should respectively take from the assured an assignment of the claim of the assured against the other, but defendants replied that assignments were unnecessary, that the matter of reallocation was fully covered by the arbitration agreement, and that the arbitration could not fail, and the plaintiff made its payment relying on that assurance. The finding of the court that the parties agreed that each would pay the other all the loss for which the other should not be found liable merely stated the agreement which the parties made when they executed the writing, Exhibit A. The defendants' claim that this finding was based entirely upon testimony as to oral statements made by their adjuster in the course of negotiations between the parties, and that the admission of

this evidence violated the parol evidence rule, is without merit. The statements of the adjuster which were admitted in evidence did not tend to vary or contradict the written agreement, and their admission was not harmful to the defendants.

The arbitrators having found that the explosion was caused by fire, that the plaintiff's policy did not specifically insure any of the property on which the loss caused by fire occurred and that the plaintiff was not liable for any part of the loss, it follows that, under the terms of Exhibit A, if they are controlling and have not been modified by the parties, the defendants became liable to refund to the plaintiff the payment which it had made to the Republic Steel Corporation in advance of the determination of the question of the respective liability of the parties.

Subsequent to the execution of Exhibit A and to the making of the advance payments of the adjusted loss in the proportions agreed upon, the parties executed a formal arbitration agreement, Exhibit B, in which the precise questions submitted to the arbitrators were formulated and the procedure outlined.

It appears to be the contention of the defendants that the obligation imposed upon them by Exhibit A was to abide by the award made in the arbitration therein agreed upon, that because of what they term the incomplete and limited reference made in the submission agreement, Exhibit B, the award did not necessarily require a reallocation of the loss, and that their refusal to pay the amount required by such reallocation was not therefore a breach of their obligations under Exhibit A. Three drafts of the proposed arbitration agreement were prepared by Berry, the plaintiff's vice-president. Two of these drafts contained the following clause: "and it is conceded by them [the defendants] that all of said loss that is not covered by

said boiler insurance policy of the Hartford Company is covered by the policies of the Factory Mutuals." This clause does not appear in the final draft of the submission. The defendants contend that by its omission the parties framed the arbitration submission in such fashion as to frustrate the whole purpose of the arbitration and make it impossible for the award to determine the question which the parties had agreed to submit to arbitration. It is apparent that the parties did not intend any such result, and furthermore that that was not the result accomplished in the execution of the arbitration agreement, Exhibit B.

Defendants say in their brief that the case turns largely upon the negotiations with reference to the execution of the arbitration agreement and the wording of the three drafts, and have asked to have the finding corrected by adding certain paragraphs of the draft-finding detailing these negotiations more fully than they are set forth in the finding. From the finding, if corrected as requested, it appears that Wiley, defendants' adjuster, objected to the clause quoted for the reason that it might prejudice his case before the arbitrators if it appeared that the defendants conceded liability and the plaintiff did not, and suggested that the plaintiff make a reciprocal concession. Berry replied that it was understood that the arbitrators might award against the plaintiff any or all loss for which the defendants were not liable and offered to have such statement incorporated in the submission agreement. After a letter from Wiley in which he renewed his suggestion of a reciprocal concession, it was agreed to leave out of the submission agreement the clause in question. Wiley was willing to leave this clause in the agreement if the plaintiff would insert a clause conceding that its policy covered all loss not covered by the defendants' policies, but for some reason which is

not apparent was unwilling to accept as its equivalent a clause that the plaintiff would pay any or all loss for which the defendants were not liable. The omission from the final draft of the clause as to coverage which appeared in the other drafts apparently followed a disagreement between Berry and Wiley as to the phraseology of the agreement, and is not significant, as defendants claim, of an intention to so alter the substance of the arbitration already agreed upon as to make it impossible for the award to answer the question which the parties had agreed to submit to arbitration.

The submission agreement itself (Exhibit B) gives no support to the defendants' contention that in its execution the parties had abandoned their original agreement for a reallocation of the loss, which had been settled for in full,. and a refund of the amount advanced by one party or the other for which it might be found not liable. It submitted three questions to the determination of the arbitrators: (1) Whether the explosion was caused by fire and the plaintiff thus relieved of all liability under its policy, (2) if it should be found that any part of the loss was within plaintiff's policy whether any part of such loss was on property "specifically insured . . . against similar liabilities" to those covered by defendants' policies and the defendants to that extent relieved, and (3) if it should be found that none of the property was so "specifically insured" under the plaintiff's policy, but that it was liable for part of the loss as not having been caused by fire, for what part of the loss it would be liable. It is apparent that if it had not been the purpose of the parties to absorb the entire loss, and had non-liability of both parties been within their contemplation, answers to these questions would not have settled the controversy and the arbitration would have

been a futile thing. Furthermore Exhibit B specifically provides for "the awarding by them [the arbitrators] in the redistribution among the parties hereto, of the amounts paid and agreed to be paid the assured by the parties hereto." In Exhibit B the parties submitted to the decision of the arbitrators the precise question which in Exhibit A they had agreed to submit to arbitration, and there is implicit in it, as there was in Exhibit A, as the basis of the arbitration, the assumption that the liability for the loss rested between the parties, and that each party would pay the other all of the loss for which the other should not be found liable. It follows that, upon the finding of the arbitrators that the loss was caused by fire and that the plaintiff was not liable for any part of it, by virtue of the terms of Exhibit B, as well as the agreement contained in Exhibit A, the defendants became liable to refund to the plaintiff the advance payment which it had made to the Republic Steel Corporation.

Since the defendants' liability was fixed by the original finding and award of the arbitrators it was unnecessary, as the trial court stated, to consider the question of the validity of the supplemental award. The admission of this award in evidence could not therefore have harmed the defendants.

The trial court did not err in overruling the defendants' motion to expunge portions of the complaint.

There is no error.

In this opinion the other judges concurred.